558 So.2d 1072 (1990)
TOYOTA OF PENSACOLA and Adjustco, Inc., Appellants,
v.
Buck E. MAINES, Appellee.
No. 89-544.
District Court of Appeal of Florida, First District.
March 16, 1990.
Rehearing Denied April 20, 1990.
*1073 Roderic G. Magie, of Karl, McConnaughhay, Roland & Maida, P.A., Pensacola, for appellants.
Thomas F. Condon, of Mitchell & Condon, P.A., Pensacola, for appellee.
ERVIN, Judge.
In this workers' compensation appeal, Toyota and Adjustco, Inc., the employer/carrier (E/C), contest an order of the judge of compensation claims (JCC), which determined that claimant's injury was compensable on the ground that he was exposed to a special hazard of employment. We affirm.
On November 27, 1987, claimant, an automobile salesman, received his weekly paycheck and then asked his supervisor for permission to leave the premises for a few minutes to drive to a nearby bank to cash the check.[1] The dealership fronts on Highway 29, a four-lane road which runs north and south. Claimant drove his automobile from the dealership, and, while waiting in the median strip of the highway in order to make a left-hand turn into the southbound lane, was struck by another vehicle, causing him grievous injuries. Evidence presented in the form of expert testimony by a Department of Transportation (DOT) employee disclosed that the stretch of highway in front of the dealership where the claimant was injured was particularly hazardous, in that within a mile of the highway on either side of the dealership the DOT had reported 41 accidents during the years 1985-86. Of those reported accidents, 78 percent transpired while motorists were entering or exiting the highway. Based upon these statistics, the witness opined that the particular area of the highway where the accident occurred was a dangerous location, and the chances of a motorist being involved in an accident there were greater than at most comparable areas on other highways in Florida.
After considering all of the facts in the case, the JCC concluded that, because the evidence indicated that the particular location of the highway was uniquely hazardous, and because the injury occurred at the very threshold of the business premises, which was the only means of southbound exit, the going and coming rule[2] did not bar the claim; therefore the injury occurred within the course and scope of employment.
Although we agree with the JCC's conclusion, we feel constrained to point out that in the absence of some particular circumstance or exception, an injury that occurs to an employee while he or she is off the employment premises for the purpose of cashing or depositing a payroll check would ordinarily be deemed to be noncompensable. In surveying applicable cases relating to the issue, Professor Larson comments that without some definite element of benefit to the employer, the special facts in those cases permitting compensation[3]

*1074 cannot be taken to support a general rule that journeys to cash pay checks are in the course of employment. Any such extrapolation would quickly get out of hand, since trips might be taken at any hour of the day or night to almost any place where claimant happened to be able to cash checks. For the time being, it would be prudent to assume that there must be at least as strong a showing of special circumstances as in the New York cases before such a journey has a chance of being covered  and even then it must be recognized that these cases are poised on the outermost limits of expansion of the course of employment concept.
1A A. Larson, The Law of Workmen's Compensation § 26.30, at 5-247 (1985) (hereafter "Larson").
Professor Larson's cautionary statements are well exemplified by Hinkle v. Workers' Compensation Appeals Bd., 175 Cal. App.3d 587, 221 Cal. Rptr. 40 (1985), in which the employee, having picked up his paycheck at his post office box, deposited it at his credit union and, while returning to his place of work, was injured in an automobile accident. In a policy similar to that followed by the employer in the case at bar, the employer in Hinkle permitted its workers to leave the business premises in order to cash or deposit their weekly paychecks. In holding that the injuries suffered by Hinkle did not arise out of and occur in the course of his employment, the court applied the same rule routinely applied in California cases involving injuries suffered by employees during unpaid off-premises lunch periods, which recognizes that in the absence of special circumstances, such as a showing that the employee was performing a service for the benefit of the employer, the claim is not considered compensable. Hinkle, 175 Cal. App.3d at 590-91, 221 Cal. Rptr. at 42.
In reaching its decision, the Hinkle court followed the rule earlier stated in County of Los Angeles v. Workers' Compensation Appeals Bd. (Swift), 145 Cal. App.3d 418, 193 Cal. Rptr. 374 (1983), involving a claim for compensation brought by an employee who was injured during a lunch break when a car crashed into a food stand where she was eating lunch. Prior to the accident, the claimant had made an arrangement with her employer allowing her to work through her two paid coffee breaks in order to extend her lunch break by one-half hour. Consequently, at the time she suffered her injuries, she was on a partially paid lunch break. In affirming the denial of compensability, the California Court of Appeals concluded that the course of employment requirement could not be met in that "the employer's only connection to the injury is to allow an employee to rearrange her work time and off-duty time for the employee's convenience or benefit." Swift, 145 Cal. App.3d at 423, 193 Cal. Rptr. at 376.
Applying the Swift rule to the facts before it, the court in Hinkle concluded:
Similarly, here, the fact that, once a week, a benevolent employer allowed a one-hour unpaid lunch period to be extended to one-and-a-half hours, without loss of pay, does not change the basic character of the off-premises lunch period. As in Swift, the injuries here occurred at a place removed from the employer's premises over which the employer had no authority. Moreover, again as in Swift, there is no evidence that applicant was rendering any service benefiting his employer during the extended lunch period or that the employer exerted any control over applicant's activities and movements during that time. Consonant with Swift, the allowance here of an additional one-half hour to the lunch period without loss of pay should not extend the employment risk. Since applicant's employer's only connection to his *1075 injury was that it allowed applicant some additional off-duty time for his convenience and benefit, the injuries are noncompensable.
Hinkle, 175 Cal. App.3d at 592, 221 Cal. Rptr. at 43 (footnote omitted).
The above comments by both Professor Larson and the California Court of Appeals offer strong persuasive authority for the conclusion that without the existence of some special circumstance, injuries suffered by an employee off the premises of his or her employment while on a temporary mission for the purpose of depositing or cashing a paycheck, even with the employer's permission and with no loss of pay, cannot be considered within the course and scope of employment.
Nevertheless, as the JCC below correctly observed, the existence of the special hazard exception[4] brings the case at bar outside the parameters of the going and coming rule. This particular exception involves two components: One is the presence of a special hazard at a particular off-premises location, and the second is the close association of the access route with the work premises. 1 Larson § 15.13(b), at 4-29. As to the first component, we agree that there exists competent, substantial evidence supporting the presence of a special hazard at the particular place where the accident in question occurred.
In regard to the second element, the close association of the access route with the premises, Florida follows the rule that the off-premises route used by the employee need not be the exclusive means of access, and that the special hazard exception will be applied if the route can be considered the usual or expected means of travel. For example, in Naranja Rock Co. v. Dawal Farms, Inc., 74 So.2d 282 (Fla. 1954), although the road on which the employee was injured  at a point immediately adjacent to the employer's premises  while traveling to a barbecue stand for coffee and shelter was not the exclusive means of access to the stand, this route was nonetheless the usual means of ingress and egress to and from the work site.
This result is similar to that reached in Petroske v. Worth Ave. Burger Place, 416 So.2d 856 (Fla. 1st DCA 1982), wherein claimant was injured when she fell into a pothole in a driveway abutting the employer's premises and leading to the rear entrance. Although the employer did not own the driveway, and despite the fact it was not the sole means of access, this court concluded that neither of those facts was fatal if there was a special hazard on an access route serving primarily to provide entry and exit to the place of employment.
In the more recent opinion of this court in Doctor's Business Serv., Inc. v. Clark, 498 So.2d 659 (Fla. 1st DCA 1986) (on rehearing en banc), review denied, 506 So.2d 1041 (Fla. 1987), we stated that although an off-premises injury to an employee is not ordinarily deemed compensable, nonetheless it is a well-established exception to the rule that the course of employment should extend to any injury that occurs at a point where the employee is within the range of dangers associated with the employment, such as a special hazard on a normal route used by the employee on his or her way to and from work.
It should be observed that the injuries to the employees in Naranja and Doctor's Business Serv. occurred while they were going to or coming from meals during their working hours. Professor Larson comments that the special hazard exception to the premises rule barring recovery should apply with equal force to situations in which an employee journeys off the employment premises to take lunch and to situations involving an employee's going to and coming from work under the theory that "[t]his approach aids in achieving consistency in this field, and serves to enlarge the body of precedents giving guidance in particular fact combinations." 1 Larson *1076 § 15.51, at 4-116.15. Thus, if a worker's normal route to and from lunch lies across a hazardous crossing contiguous to or near the place of employment, an injury that occurs at that crossing may be held compensable. 1 Larson § 15.52, at 4-116.25.
Following compensation to an employee whose injuries are caused by a special hazard near the premises of a work site on a normal route, if the route is used by an employee as a means of entry to or exit from his or her place of work, regardless of what reason motivated the personal errand, such as returning to one's home, going to lunch, or, as here, proceeding to a bank to cash a paycheck, so long as such activities are not expressly prohibited by the employer. The only essential inquiry under the circumstances is whether, as stated by this court in Doctor's Business Serv., 498 So.2d at 665, "[t]he danger is one to which the employee by reason of and in connection with [his or] her employment[] is subjected peculiarly or to an abnormal degree." The evidence at bar clearly established that the injury occurred at a point where the employee was within the range of dangers associated with the employment in that it was on the normal route used by the employee to access and exit his place of employment; it was on the median strip of Highway 29, which was practically contiguous to his employer's business; and it was at a location which was exceptionally hazardous.
In addition to the above challenge, appellant raised a second issue relating to whether the expert witness's testimony regarding the dangerous condition of the road was sufficiently related to the ultimate issue of the case so as to be admissible. We affirm on that point as well. The witness was qualified to give an expert opinion based upon his experience. See Section 90.702, Florida Statutes (1987). Although appellant contends that the opinion the expert gave did not relate to the ultimate issue of the case (i.e., risks peculiar to claimant's employment), but rather pertained to risks faced by the public in general, it is undisputed that Highway 29 was the only access available to enter and exit the employer's premises. Consequently, the expert's testimony was sufficiently linked to the ultimate issue to be decided. See Section 90.703, Florida Statutes (1987).
AFFIRMED.
WIGGINTON, J., concurs.
WENTWORTH, J., agrees to conclusion.
NOTES
[1] The employer's routine policy was to allow its employees to leave the premises during normal working hours for personal errands, including the cashing or depositing of their paychecks, without clocking out or deducting from their wages.
[2] The going and coming rule provides that an employee may not recover compensation for injuries sustained while traveling to and from his or her place of employment.
[3] For example, two New York appellate decisions approved compensation awards to employees who suffered off-premises injuries during their lunch hour while cashing their paychecks. See Flamholtz v. Byrde, Richards & Pound, Inc., 37 A.D.2d 645, 322 N.Y.S.2d 382 (1971); Watson v. American Can Co., 23 A.D.2d 423, 261 N.Y.S.2d 306 (1965), aff'd, 18 N.Y.2d 758, 274 N.Y.S.2d 683, 221 N.E.2d 463 (1966). In both cases each of the employers had benefited from its policy of permitting employees the privilege of cashing checks during working hours, because each had recently instituted the practice of paying its employees by check rather than by cash, hence the risk of robbery was reduced in that the employers were no longer required to keep on hand large amounts of cash.
[4] This exception provides that when there is a special hazard on a normal route used by an employee to travel to or from his or her place of employment, the hazards of that route under appropriate circumstances become the hazards of employment. Doctor's Business Serv., Inc. v. Clark, 498 So.2d 659, 663 (Fla. 1st DCA 1986) (on rehearing en banc), review denied, 506 o.2d 1041 (Fla. 1987).